*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JANELLE L. SWEENEY, | ) | |
| | ) | Supreme Court No. S-15746 |
| Appellant, | ) | |
| | ) | Superior Court No. 4FA-04-00025 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ROBERT J. ORGAN, | ) | |
| | ) | No. 7097 – April 15, 2016 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Mila A. Neubert, Neubert Law Office, LLC, Fairbanks, for Appellant. Gary L. Stapp, The Law Office of Gary L. Stapp, Inc., Fairbanks, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

STOWERS, Chief Justice.

## I. INTRODUCTION

A couple had one child during their marriage. After their divorce the parents shared physical and legal custody of the child. In 2013 the mother filed a motion to modify custody requesting primary physical custody to move with the child from Fairbanks to Anchorage, and the superior court granted her primary physical custody for as long as the parties resided in different communities. The court also made findings

regarding the father's abusive communication style. The father moved to Anchorage soon after the mother, and the parties began sharing physical custody again. After an incident where the father brought the police to the mother's residence because she had declined to give him visitation time outside the custody order, the mother again moved to modify custody. Following a three-day hearing, the court found that there was a change in circumstances and modified legal custody by giving the mother the right to make all major parenting decisions. But it declined to give the mother primary physical custody because it found that doing so would be devastating to the child and would increase the friction between the parents.

The mother appeals; her sole argument on appeal is that the superior court misapplied the best interest factors. She argues that the court should have awarded her primary physical custody because it found that the father's abusive communication style had not changed. And she argues that the court essentially rewarded the father's bad behavior by finding that friction between the parents would increase if they did not share physical custody equally. We affirm the superior court's order.

## II.    FACTS AND PROCEEDINGS

Janelle Sweeney and Robert Organ married in November 1997 in Fairbanks. They had one child, Elizabeth,[1] who was born in 2000. Elizabeth was born with Dandy Walker Syndrome, a congenital brain malformation that causes her to function below her chronological age. The parties divorced in February 2005 and agreed to joint legal and shared physical custody: the physical custody arrangement provided for a 4/3-3/4 alternating week schedule with each parent having Elizabeth for 50% of the time annually. That arrangement changed to a week-on/week-off schedule in March 2014. Janelle subsequently remarried and had a second child.

---

[1]     We use a pseudonym for the daughter to protect her privacy.

In 2012 Janelle filed a motion seeking primary physical custody of Elizabeth so that she and Elizabeth could move to Anchorage. The superior court granted Janelle primary physical custody of Elizabeth during the school year and Robert custody of Elizabeth during Elizabeth's summer vacation. But the court ordered that custody return to shared physical custody if the parents were to live in the same community again.

After that order, Robert decided to move to Anchorage to be able to have shared physical custody. It took Robert a few months to make the move, and during that time Janelle exercised primary physical custody of Elizabeth. While Robert was in the process of moving he requested many weekends of visitation with Elizabeth that were outside the court's order. On one occasion, after Janelle denied Robert's visitation request, he showed up at Janelle's sister's house (where the family was living) with two Anchorage police officers, explaining that he wanted to give Elizabeth a present. Janelle believed that this was intended to harass and embarrass her, and she felt "shocked, frightened, and unnerved to have police show up at the house." She stated that the incident also greatly distressed Elizabeth.

Janelle filed a motion to show cause in response to the police incident, and after a hearing the superior court found Robert's conduct to be "intentional and malicious and designed to be disruptive." The court warned that continued disruptive conduct by Robert would constitute a change in circumstances that could justify modifying the custody order such that Janelle would have primary physical custody and Robert would have very restricted visitation.

Based on the court's findings, Janelle filed a motion to modify custody requesting primary physical and sole legal custody. The court held a three-day evidentiary hearing in August and September 2014. The court found that Robert's disrespectful and power-oriented manner of speaking to Janelle had become intentionally

disrespectful conduct that represented a change in circumstances. Specifically, the court concluded that the police incident was "intended to make a scene" and to "demonstrate power over the mother, even at the cost of harm to Elizabeth."

In its order modifying custody the court gave all decision-making authority to Janelle involving Elizabeth's education and medical care, but it left the label of joint legal custody in place so that Robert could still "go directly to the medical providers and the schools and others for his information." However, the court decided to maintain shared physical custody between the parties, specifically finding that a change from a week-on/week-off custody schedule would be "disastrous" to Elizabeth. The court also found that awarding Janelle primary physical custody would "require even more contact, more coordinations, there would be more requests for additional times; it would only make matters worse."

In support of maintaining shared physical custody, the court also determined that while Janelle was more capable of meeting Elizabeth's special needs, Janelle was "not completely respecting of the relationship between the child and the father, the child's social needs, and the child's need for continuity and stability," mainly due to the chaos stemming from the move. And the court noted that changing the custody schedule, "from [Elizabeth's] perspective, . . . would be disastrous. That's not her life. Her life is week-on/week-off." The court ordered the parents to "get back to week-on/week-off and behave [themselves]."

Janelle appeals. She agrees with the superior court's factual findings and its legal custody order,[2] but she argues that the superior court abused its discretion when it declined to award her primary physical custody.

---

[2]     The legal custody order is therefore not before us on this appeal.

-4-                                                        7097

## III. STANDARD OF REVIEW

"The trial court has broad discretion in child custody decisions."[3] We will reverse the superior court's decision when "the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[4] "A superior court abuses its discretion in the custody context when it 'fails to consider statutorily mandated factors, weighs factors improperly, or includes improper factors in its decision.' "[5]

## IV. DISCUSSION

### A. The Court Did Not Abuse Its Discretion When It Applied The Best Interest Factors.

Alaska Statute 25.24.150(c) requires the superior court to base its custody rulings on the child's best interests.[6] The statute lists " 'nine *potentially relevant* factors that the court must consider' when determining the best interests of the child":[7]

> [1] the needs of the child; [2] each parent's ability and desire
> to meet those needs; [3] the child's preference, if he or she is

---

[3] *Veselsky v. Veselsky*, 113 P.3d 629, 632 (Alaska 2005) (citing *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000)).

[4] *J.F.E. v. J.A.S.*, 930 P.2d 409, 411 (Alaska 1996) (citing *Farrell v. Farrell*, 819 P.2d 896, 898 (Alaska 1991)); *see also Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002).

[5] *Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010) (quoting *Michele M. v. Richard R.*, 177 P.3d 830, 834 (Alaska 2008)); *see also Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005); *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998).

[6] *Moore v. Moore*, 349 P.3d 1076, 1080 (Alaska 2015); *Ronny M. v. Nanette H.*, 303 P.3d 392, 401 (Alaska 2013); *Schmitz v. Schmitz*, 88 P.3d 1116, 1122 (Alaska 2004); *West v. West*, 21 P.3d 838, 841 (Alaska 2001); *Park v. Park*, 986 P.2d 205, 206 (Alaska 1999); *Siekawich*, 956 P.2d at 451.

[7] *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1091-92 (Alaska 2015) (emphasis in original) (quoting *Park*, 986 P.2d at 206).

old enough to have one; [4] the love and affection between the child and each parent; [5] the stability and continuity of the child's environment; [6] the willingness of each parent to facilitate the child's relationship with the other parent; [7] any domestic violence or child abuse; [8] any substance abuse that directly affects the child; and [9] other factors that the court deems pertinent.[8]

The superior court need not mention each factor by name; it is sufficient if the findings provide "a clear indication of the factors [that the court] considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[9]

We are satisfied that the superior court considered the relevant factors under AS 25.24.150(c). Janelle concedes that the court considered the willingness of each parent to foster a relationship between the child and the other parent. The court commented that by moving to Anchorage Janelle was not completely respectful of Elizabeth's relationship with her father and Elizabeth's social needs. But the court appeared not to weigh this factor very heavily, and it found that Janelle made the move in good faith.[10]

---

[8] *Id.*; *see also* AS 25.24.150(c); *Moore*, 349 P.3d at 1080 & n.9; *Ronny M.*, 303 P.3d at 401 & n.26; *Park*, 986 P.2d at 206-207.

[9] *Rosenblum v. Perales*, 303 P.3d 500, 504 (Alaska 2013) (alteration in original) (quoting *Ebertz*, 113 P.3d at 648); *see also Ronny M.*, 303 P.3d at 401-402 (quoting *Chesser v. Chesser-Witmer*, 178 P.3d 1154, 1158 (Alaska 2008)); *Siekawitch*, 956 P.2d at 451; *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 137 (Alaska 1997).

[10] Had the court given dispositive weight to this factor — in effect punishing Janelle for having chosen to move to another community notwithstanding the court's finding that the move was made for legitimate reasons — it would have abused its discretion. *See Moeller-Prokosch v. Prokosch*, 27 P.3d 314, 317 (Alaska 2001) ("The court is to assess the best interests in light of all of the relevant factors, including the

(continued...)

The court also considered the needs of the child and the parents' capabilities in meeting those needs when it found that Janelle was better able to meet Elizabeth's needs. It then considered the love and affection between the child and each parent when it noted that "[Elizabeth] has to feel that she has a place that she can call home and that the important people in her life can come to [visit]. That's her father." And the court emphasized the importance of the stability and continuity of the child's environment when it concluded that a change from week-on/week-off custody "would be 'disastrous' to her because 'that's not her life.'"

Janelle contends that the superior court abused its discretion because it should have modified physical custody upon finding that Robert's behavior had worsened. She argues that "it is difficult to determine why the court decided that a change in physical custody would make things worse beyond the court's statement that it would." According to Janelle the court noted the harm to Elizabeth but was "unable to fashion a remedy and so left shared physical custody in place." And Janelle argues that, notwithstanding the superior court having found that Robert's behavior was bad and had gotten worse, the court failed to craft a remedy to protect Elizabeth from harm and Janelle from further conflict.

The superior court found that the parents' inability to communicate effectively was harming Elizabeth. It strongly admonished Robert for his negative communication style and disrespectful conduct, finding that Robert intentionally acted to intimidate, harass, and bully Janelle. The court also found that Robert was indifferent to the harm his conduct inflicted on Elizabeth: it highlighted the incident where Robert

---

[10](...continued)
impact of the move on the child. No Alaska law allows a court to require a custodial parent to forego relocation if custody with that parent remains in the child's best interests and the relocation is not for an illegitimate reason.").

came to Janelle's house with the police to deliver a package to Elizabeth and Robert's incessant requests for additional time with Elizabeth in the roughly three months that Janelle had primary physical custody in early 2014.

We are puzzled that the court evidently did not consider other options it had to craft a custody order that could have reduced the opportunities for contact and friction between Robert and Janelle. But we have noted in prior decisions that "[i]t is the well-being of the child rather than the reward or punishment of a parent that ought to guide every aspect of a custody determination,"[11] and we are reviewing the court's order under a deferential abuse of discretion standard.

This is a very close case, but we are persuaded that the superior court's decision was focused primarily on Elizabeth's best interests: the court considered the relevant factors and found that a change from shared physical custody "would be disastrous" to this special needs child. We have often stated that when a trial court's decision is based primarily on oral testimony, the court's findings are given particular deference.[12] Given the superior court's finding and strong reliance on the great harm that Elizabeth would suffer if custody were changed, we cannot conclude that the court abused its discretion. But we also caution that the court has many tools at its discretion to ensure that Robert does not continue his abusive conduct towards Janelle, and the court should exercise its discretion as the circumstances warrant.

---

[11] *Hakas v. Bergenthal*, 843 P.2d 642, 644 n.3 (Alaska 1992) (quoting *In re Marriage of McGee*, 613 P.2d 348, 350 (Colo. App. 1980)).

[12] *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (quoting *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011)).

## V. CONCLUSION

We conclude that the court's primary motivation in maintaining shared physical custody was that the arrangement continued to be in Elizabeth's best interests, and the court therefore did not abuse its discretion. Because the superior court did not abuse its discretion when it weighed the best interest factors set out in AS 25.24.150(c), we AFFIRM the superior court's order.